UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

-------------------------------------------------------
                             :

JULIE A. FRIEG,                   :

               Plaintiff,      :     CASE NO. 1:12-CV-02455

                             :

vs.                          :     OPINION & ORDER

                           :     [Resolving Doc. No. 43]

CITY OF CLEVELAND, *et. al*.,   :

                           :

            Defendants.     :

                           :

-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

      This is a case about whether City of Cleveland police officers used excessive force while handcuffing Plaintiff Julie Frieg.  Frieg brought this 42 U.S.C. § 1983 action against Defendants: (1) the City of Cleveland; (2) Chief of Police Michael McGrath; (3) Officer Christopher Ereg; and (4) certain Unknown Police Officers.[1]  The Court granted the City's and McGrath's motion to dismiss.[2]  Now, Officer Ereg asks the Court to grant him summary judgment under Federal Rule of Civil Procedure 56.[3]  He says that he is entitled to qualified immunity.  For the reasons below, the Court **DENIES** Ereg's motion.

## I.  Background

*A. Undisputed Facts*

      In the early morning of October 3, 2012, Officers Ereg and Schultz were patrolling the area near West Sixth Street in Cleveland, Ohio.[4]  West Sixth Street has many bars and nightclubs, and

---

[1] Doc. 31.
[2] Doc. 42.
[3] Doc. 43.
[4] Doc. 43-1.

Case No. 1:12-CV-02455
Gwin, J.

the police often patrol the area at closing time.[5] Earlier that night, Frieg had visited a nearby nightclub with her friend.[6] Around closing time, several people got into a fight near that club.[7] The police broke up the fight, and a Cleveland police officer arrested and handcuffed Frieg.[8] Officer Ereg says that Frieg was drunk and was one of the people in the fight.[9] But Frieg denies this.[10] At 2:53 a.m., Officer Ereg radioed dispatch that he would bring Frieg to the jail for booking.[11] At 2:55 a.m., the officers and Frieg arrived at the city jail.[12] Around 3:00 a.m., the officers escorted Frieg into the jail's booking area, where they removed her handcuffs.[13] Frieg later sought medical treatment for her left wrist.[14]

Frieg and Ereg disagree about the timing and details of her arrest.

*B. Disputed Facts*

Frieg agrees that she went to the club with a friend.[15] But Frieg says that she was not intoxicated when she exited the nightclub around 1:45 a.m.[16] After she walked outside, she says that she saw several people fighting, including her friend.[17] Frieg says that she was not involved in the

---

[5]/Doc. 43-1.
[6]/Doc. 44-1 at 24-25.
[7]/Doc. 44-1 at 28.
[8]/Doc. 44-1 at 32.
[9]/Doc. 43-1 at 2.
[10]/Doc. 44-1 at 31, 41.
[11]/Docs. 43-1; 43-7. Ereg provided a copy of the radio "event chronology," which shows that he placed a call to the jail at 2:53 a.m. Doc. 43-7. Ereg and Schultz also provided the Court with their duty reports for October 2, 2010, which covers the shift they worked prior to the incidents at issue here. Docs. 43-2; 43-9.
[12]/Docs. 43-1; 43-7.
[13]/Doc. 43-1.
[14]/Doc. 44-1 at 6.
[15]/Doc. 44-1 at 23.
[16]/Doc. 44-1 at 31, 41.
[17]/Doc. 44-1 at 28-29.

-2-

Case No. 1:12-CV-02455
Gwin, J.

fight, which was about twenty feet away from her.[18] But, Frieg says that, within seconds of her exiting the club, Ereg arrested her and dragged her to his police car.[19]

Frieg says that Ereg placed her in painfully tight handcuffs.[20] She says that she complained about the tightness of the handcuffs when she was arrested and while she was in the car.[21] But, she says that Ereg ignored her complaints and refused to remove or loosen the handcuffs.[22]

Frieg says that she spent about forty-five minutes in handcuffs while in the back seat of the police car.[23] Frieg says that Ereg sat in the front seat of the car for most of that time, talking to his partner and another police officer.[24] When Ereg and Frieg arrived at the police station, Frieg says that Ereg asked her, "Didn't you say those cuffs were too tight?"[25] Frieg said, "Yes."[26] Ereg responded, "Well, we'll just leave them on a little longer."[27]

In contrast, Ereg says that he first saw the fight outside the club at 2:40 a.m.[28] He says that he saw Frieg "yelling, swearing, and throwing punches at another person."[29] Ereg says that Frieg was intoxicated.[30] Ereg does not recall who handcuffed Frieg, nor does he recall who placed Frieg

---

[18]Doc. 44-1 at 28-29.

[19]Doc. 44-1 at 34-36. Ereg says that he cannot recall who put the handcuffs on Frieg or who placed her in the car. Doc. 43-1 at 2. But, Frieg says that Ereg handcuffed her. Doc. 44-1 at 32.

[20]Doc. 44-1 at 32-35.

[21]Doc. 44-1 at 35, 44.

[22]Doc. 44-1 at 52.

[23]Doc. 44-1 at 39. If Frieg is correct that she was arrested around 1:45 a.m., then she spent over an hour in handcuffs.

[24]Doc. 44-1 at 37-40.

[25]Doc. 44-1 at 53.

[26]Doc. 44-1 at 53.

[27]Doc. 44-1 at 53.

[28]Doc. 43-1 at 2. The citation says that Frieg's violation occurred around 2:40 a.m. Doc. 43-3.

[29]Doc. 43-1 at 2.

[30]Doc. 43-1 at 2.

Case No. 1:12-CV-02455
Gwin, J.

in the patrol car.[31/]  But, Ereg says that he always follows police handcuffing procedure, and that he

did not drag Frieg to the car.[32/]  He also says that the total time that Frieg was in handcuffs was

twenty minutes, from the time of Frieg's arrest until they arrived in the booking area.[33/]  Ereg denies

that Frieg ever complained to him about the handcuffs, and he denies mocking her.[34/]

*C. Procedural History*

In October 2012, Frieg brought this § 1983 action against the City of Cleveland, Chief of

Police Michael McGrath, Officer Christopher Ereg, and the Unknown Police Officers.[35/]  Frieg says

that Officer Ereg placed handcuffs on her too tightly.[36/]  The Court granted McGrath's and the City's

motion to dismiss.[37/]  Ereg now asks the Court to grant him summary judgment, saying that he is

entitled to qualified immunity.[38/]

## II.  Legal Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings,

the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue

as to any material fact and that the movant is entitled to judgment as a matter of law."[39/]

---

[31/]Doc. 43-1 at 2.  Similarly, Officer Schultz says that he does not know who put Frieg in handcuffs.  Doc. 43-8 at 2.

[32/]Doc. 43-1 at 2.

[33/]Doc. 43-1.

[34/]Doc. 43-1.

[35/]Doc. 1.

[36/]Doc. 31.

[37/]Doc. 42.

[38/]Doc. 43.

[39/]*Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008).  As the moving party, Ereg has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of Frieg's case.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "A fact is material if its resolution will affect the outcome of the lawsuit." *Martingale, LLC v. City of Louisville*, 361 F.3d 297, 301 (6th Cir. 2004).  The moving party meets its burden by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp.*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).  Once the

-4-

Case No. 1:12-CV-02455
Gwin, J.

### III. Analysis

The Court finds that Ereg is not entitled to qualified immunity as a matter of law. "Government officials who perform discretionary functions are generally protected from liability for civil damages as long as their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"[40] "Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity."[41]

In determining whether a defendant is entitled to a qualified immunity defense, the Court uses a two-part test. The Court must determine: (1) whether, taken in the light most favorable to the plaintiff, the facts alleged constitute a violation of a constitutional right; and (2) whether the constitutional right at issue was clearly established at the time of the defendant's conduct.[42] Here, Ereg concedes that Frieg's evidence sufficiently alleges a constitutional violation.[43] Thus, the Court considers only whether Frieg's constitutional right to be free from excessive force was clearly established.

Frieg's evidence shows that a genuine issue of material fact exists whether her right to be free

---

moving party satisfies its burden, the burden shifts to the non-moving party to set forth specific facts showing a triable issue. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). It is not sufficient for the non-moving party merely to show that there is some existence of doubt as to the material facts. *See id.* at 586. Nor can the non-moving party rely upon mere allegations or denials of its pleadings. Fed. R. Civ. P. 56(e). In deciding a motion for summary judgment, the Court views the factual evidence and draws all reasonable inferences in favor of the non-moving party. *Thomas v. Cohen*, 453 F.3d 657, 660 (6th Cir. 2004) (citations omitted). *Martingale*, 361 F.3d at 301.

[40] *Sallier v. Brooks*, 343 F.3d 868, 878 (6th Cir. 2003) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[41] *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).

[42] *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).

[43] Doc. 45 at 3-4 ("Here, Officer Ereg is not disputing whether plaintiff has set forth sufficient facts to support an excessive force handcuffing case.").

Case No. 1:12-CV-02455
Gwin, J.

from too-tight handcuffing was clearly established for circumstances similar to Frieg's.  "For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."[44]  An official violates a clearly established right when "in light of pre-existing law the unlawfulness [is] apparent."[45]  The Court must make its inquiry "through the lens of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[46]  Thus, the Court asks whether a reasonable officer in Ereg's position would have realized that handcuffing similar to Frieg's handcuffing was a constitutional violation.

The Sixth Circuit has held that "a generalized right to be free from unduly tight handcuffing is clearly established," but that a court must conduct a "more particularized inquiry."[47]  Frieg must show that Ereg's actions were "objectively unreasonable given the circumstances"of her arrest.[48]

The relevant circumstances include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[49]  Courts also consider whether the plaintiff was intoxicated,[50] the length of time the plaintiff was in handcuffs,[51] and the promptness of the officer's response to a complaint.[52]  While there is no bright-line temporal rule, in other excessive force cases based on a theory of too-tight handcuffing, the Sixth Circuit has found ten minutes of too-tight

---

[44] *Feathers v. Aey,* 319 F.3d 843, 848 (6th Cir. 2003) (internal quotations omitted).

[45] *Hope v. Pelzer,* 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)).

[46] *Lyons,* 417 F.3d at 573 (internal quotation omitted).

[47] *Fettes v. Hendershot,* 375 Fed. Appx. 528, 533 (6th Cir. 2010) (internal citation omitted).

[48] *Binay v. Bettendorf,* 601 F.3d 640, 650 (6th Cir. 2010).

[49] *Solovy v. Morabito,* 375 Fed. Appx. 521, 525 (6th Cir. 2010) (quoting *Graham v. Connor,* 490 U.S. 386, 396 (1989)).

[50] *Marvin v. City of Taylor,* 509 F.3d 234, 246 (6th Cir. 2007).

[51] *Fettes,* 375 Fed. Appx. 528.

[52] *Burchett v. Kiefer,* 310 F.3d 937 (6th Cir. 2002) (holding that there was no constitutional violation when an officer responded promptly to the suspect's first complaint about the tight handcuffs, even when the suspect had been in handcuffs for three hours).

Case No. 1:12-CV-02455
Gwin, J.

handcuffing reasonable,[53] but thirty-five minutes unreasonable.[54]

Here, taking the evidence in the light most favorable to Frieg, her evidence shows that a genuine issue of material fact exists whether a reasonable officer would have realized that Frieg's handcuffing was a constitutional violation.  First, Ereg arrested Frieg for disorderly conduct, which is only a minor misdemeanor violation.[55]  Second, Frieg did not resist arrest or attempt to flee from Ereg.[56]  Third, although disputed, Frieg says that she was not intoxicated at the time of her arrest.[57]  Fourth, Frieg says that she complained about the painfulness of the handcuffs, and Ereg ignored those complaints.[58]  Finally, Frieg's evidence shows that she spent over an hour in too-tight handcuffs.[59]

Ereg cites to *Fettes v. Hendershot*, 375 Fed. Appx. 528 (6th Cir. 2010), to say that a reasonable officer could have believed that Frieg's handcuffing was constitutional.[60]  In *Fettes*, the court held that an officer acted reasonably when the plaintiff spent only a short time in handcuffs, the police officer did not act maliciously, and the officer "adhere[d] to police handcuff protocol."[61]

But, taking the evidence in the light most favorable to Frieg, *Fettes* is distinguishable.  In *Fettes*, the officers held a plaintiff in tight handcuffs for ten minutes while they drove to the police station.[62]  Here, Frieg's evidence could support a finding that Ereg arrested her around 1:45 a.m.[63]

---

[53]/*Fettes*, 375 Fed. Appx. 528.

[54]/*Martin v. Heideman*, 106 F.3d 1308 (6th Cir. 1997).

[55]/Doc. 43-3.

[56]/*See* Docs. 43-1; 43-8.  Frieg says that she was compliant.  Doc. 44-1 at 33-34.

[57]/Docs. 43-1 at 2; 44-1 at 41.

[58]/Docs. 43-1 at 3; 44-1 at 35.

[59]/Docs. 43-1 at 2; 44-1 at 39.

[60]/Doc. 43 at 12 (quoting *Fettes*, 375 Fed. Appx. at 533-34).

[61]/*Fettes*, 375 Fed. Appx. at 533-34.

[62]/*Id*.  That plaintiff did not dispute that the handcuffs were on for about ten minutes.

[63]/Doc. 44-1 at 31-32.

Case No. 1:12-CV-02455
Gwin, J.

Because the jail records show that Frieg arrived around 3:00 a.m., her evidence could support a finding that Ereg subjected her to painful handcuffing for over an hour.[64] Further, unlike the officer in *Fettes*, Frieg's evidence shows that Ereg may not have followed police handcuffing protocol. The "Peace Officer Basic Training Curriculum" requires the officer to ask the suspect if the handcuffs are too tight.[65] But, Frieg says that she complained about the handcuffs, and Ereg ignored her complaints.[66] Additionally, unlike the officer in *Fettes*, Frieg says that Ereg taunted her after she complained.[67] Thus, Frieg has presented enough evidence for a jury to find that a reasonable officer in Ereg's position would have realized that Frieg's handcuffing was unconstitutional.

### IV. Conclusion

For the reasons stated above, this Court **DENIES** Ereg's motion for summary judgment.

IT IS SO ORDERED.

Dated: July 25, 2013                                s/     *James S. Gwin*
                                                    JAMES S. GWIN
                                                    UNITED STATES DISTRICT JUDGE

---

[64]/Ereg disputes Frieg's timeline of events and says that Frieg was in handcuffs for "no more than twenty minutes." Doc. 43 at 12. But this a genuine issue of material fact for the jury to decide.

[65]/Doc. 43-4.

[66]/Doc. 44-1 at 35.

[67]/Doc. 44-1 at 53.